UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC DOBBS,

        Petitioner,

                                           Case No. 14-cv-11321

v.

                                           HON. MARK A. GOLDSMITH

MARY BERGHUIS,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

This is a habeas case brought pursuant to 28 U.S.C. § 2254.   Petitioner Cedric Dobbs was convicted of three counts assault with intent to murder, Mich. Comp. Laws § 750.83; two counts of felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b; following a jury trial in the Wayne County Circuit Court.   He was sentenced, as a fourth habitual offender under Mich. Comp. Laws § 769.12, to concurrent terms of 25-to-40 years' imprisonment on the assault convictions, concurrent terms of 3-to-10 years' imprisonment on the felon in possession convictions, and concurrent terms of two years' imprisonment on the felony-firearm convictions to be served consecutively to the other sentences in 2011.

In his pleadings, Petitioner raises claims concerning his right to present a defense, his right to confront witnesses and the effectiveness of trial counsel, the denial of an adjournment motion, the conduct of the prosecutor, and the scoring of the offense variables of the state sentencing guidelines.   For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also declines to issue a certificate of appealability and denies leave to proceed in forma

1

pauperis on appeal.

## I.  BACKGROUND

Petitioner's convictions arise from two incidents in which he fired shots at a man who was involved in a relationship with the mother of his children.  The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant was charged with shootings that took place on two separate dates, September 16 and October 29, 2010.  In the first incident, defendant maneuvered his car in an attempt to block a vehicle driven by Martez Graham from backing out of a driveway. Defendant then uttered some hostile words before firing a weapon at Graham's vehicle as Graham was taking evasive action.  Graham was struck by gunfire in the neck and chest and crashed into a tree. An elderly man in the neighborhood, Juan Muckleroy, drove Graham to the hospital after Graham had stumbled out of his car and knocked on Muckleroy's door yelling for help.  Graham, who definitively identified defendant as the shooter, testified that defendant was angry at Graham relative to a dispute concerning a sexual relationship between Graham and the mother of defendant's children.  The two men had previously engaged in arguments before the shooting.  With respect to the second incident slightly over a month later, Graham was driving a vehicle accompanied by his cousin, Jannissares King, when defendant pulled alongside in his own vehicle at a stop sign and began shooting at Graham and King with an assault rifle.  Graham was not injured, but King suffered a bullet wound to his left shoulder.  Graham again identified defendant as the shooter. King twice identified defendant as the shooter before trial; however, King refused to testify at trial after taking the stand and answering some preliminary questions, leading to King being jailed for contempt of court.  There was some police testimony about King's pretrial identifications of defendant as the shooter in the second incident.  As to both shootings, there was police testimony regarding gunfire damage to the vehicles driven by Graham.

People v. Dobbs, Nos. 305097, 305098, 2012 WL 4215238, at *1 (Mich. Ct. App. Sept. 20, 2012) (per curiam).

2

Following his convictions and sentencing, Petitioner pursued an appeal of right with the Michigan Court of Appeals, raising the same claim presented on habeas review.   The court denied relief on his claims and affirmed his convictions and sentences.   Id. at *1-*8.   Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.   People v. Dobbs, 828 N.W.2d 48 (Mich. 2013).

Petitioner thereafter filed his federal habeas petition, raising the following claims:

   i.    "The trial court denied [him the] right to present a defense";

   ii.    "[The trial court erred] in allowing Mr. King's hearsay statement into evidence.   Failing to object [was] ineffective assistance of counsel";

   iii.    "[The trial court erred in] denying a motion to adjourn the trial in order to secure the presence of a res gestae witness";

   iv.    "The prosecution presented a witness who refused to testify in front of the jury"; and,

   v.    "Offense variables were mis-scored."

Pet. at 5, 7-8, 10-11 (cm/ecf pages).

Respondent has filed an answer to the petition (Dkt. 8), contending that it should be denied because the claims lack merit.

## II.   STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported,

4

the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id.  A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

5

### III.   ANALYSIS

**A.  Right to Present a Defense Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court erred and violated his right to present a defense by refusing to allow him to introduce evidence about other people who had disputes with Martez Graham and may have wanted to harm him.   Such evidence consisted of:

> a videotape that purportedly depicted Graham and other individuals committing an assault on a third party, a statement made by Graham at the preliminary examination that "I guess somebody hater trying to get me locked up," details about alleged disputes between Graham and several other men that were denied by Graham during his examination, personal protection orders (PPOs) issued against Graham involving a female, and an argument between Graham and some individual that led to Graham's arrest relative to a stolen truck.

Dobbs, 2012 WL 4215238, at *1.

As an initial matter, the Court notes that alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for habeas relief.   Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Serra v. Mich. Dep't of Corr., 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the errors render the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."   McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (quoting Estelle, 502 U.S. at 69-70); see also Wynne v. Renico, 606 F.3d 867, 871 (6th Cir. 2010).   Accordingly, to the extent that Petitioner asserts that the trial courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted.   State courts are the final arbiters of state law and the federal courts will not intervene in such matters.   Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also

6

Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner, however, also asserts that he was denied the right to present a defense.  The right of an accused to present a defense has long been recognized as "a fundamental element of due process."   Washington v. Texas, 388 U.S. 14, 19 (1967); see also Holmes v. South Carolina, 547 U.S. 319, 329-331 (2006) (state rule excluding evidence of third-party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process).  A defendant's right to present evidence is not unlimited, however, and may be subject to "reasonable restrictions."   United States v. Scheffer, 523 U.S. 303, 308 (1998).   A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence."   Montana v. Egelhoff, 518 U.S. 37, 42 (1996); see also Holmes, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury").

State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"   Scheffer, 523 U.S. at 308.   "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interest in the criminal trial process."   Id.   When deciding if the exclusion of evidence impairs a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result.   The

7

question is whether the defendant was afforded "a meaningful opportunity to present a complete defense."  Crane v. Kentucky, 476 U.S. 683, 690 (1986); see also Chambers, 410 U.S. at 302.

Citing Holmes and Chambers, as well as state law, the Michigan Court of Appeals ruled that the trial court did not err in excluding potential evidence of third-party guilt, because Petitioner failed to allege or establish that any third party who had a motive to shoot Graham could be linked to the crimes or the crime scenes.  The court found that Petitioner's evidence of potential third-party guilt was speculative and remote, lacked a sufficient connection to the crimes, and did not raise a reasonable doubt as to Petitioner's guilt, given Graham's emphatic and unequivocal identification of Petitioner as the perpetrator of both shootings.  Dobbs, 2012 WL 4215238, at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, the exclusion of the proposed testimony was reasonable and within the trial court's discretion under state evidentiary rules.  See Mich. R. Evid. 401, 402, 404(a), 608 (discussing relevancy and character evidence).  Moreover, Petitioner was able to challenge the testimony and credibility of Graham and the other prosecution witnesses through cross-examination.

Second, the exclusion of the proposed testimony did not violate Petitioner's constitutional rights.  While evidence that tends to prove a person other than the defendant committed a crime is relevant, there must be some connection between the other alleged perpetrator and the crime, not mere speculation by the accused.  See DiBenedetto v. Hall, 272 F.3d 1, 8 (1st Cir. 2001); see also Berry v. Palmer, 518 F. App'x 336, 342 (6th Cir. 2013) (denying relief on similar claim).  In this case, the proposed testimony of third-party guilt was speculative, because there was no evidence that the third parties who had prior disputes with the victim had threatened to shoot him, were near

8

the crimes scenes, or were linked to the shootings in some way.   Moreover, mistaken identification was not an issue, because Graham knew Petitioner and positively identified him as the perpetrator of both shootings.   Petitioner fails to show that he was denied the right to present a defense or that the trial court's evidentiary ruling rendered his trial fundamentally unfair. Therefore, habeas relief is not warranted on this claim.

**B.  Right to Confront Witnesses/Ineffective Assistance of Counsel Claim**

Petitioner also asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting hearsay testimony from police regarding King's pretrial identifications of Petitioner as the perpetrator of the second shooting, and that trial counsel was ineffective for failing to object to that testimony.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  Davis v. Alaska, 415 U.S. 308, 315 (1973).  The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial.   Maryland v. Craig, 497 U.S. 836, 847-848 (1990).   In Crawford v. Washington, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible, unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.   Testimonial statements include grand jury testimony, preliminary hearing testimony, and prior trial testimony, as well as statements made during police interrogations.   Id. at 54.   Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy.   Id. at 51-52, 56; United States v. Martinez, 430 F.3d 317, 328-329 (6th Cir. 2005); see also United States v. Stover, 474 F.3d 904, 912-913 (6th Cir. 2007).   The

Confrontation Clause is not implicated, and, thus, need not be considered, when non-testimonial hearsay is at issue.  Davis v. Washington, 547 U.S. 813, 823-826 (2006); Desai v. Booker, 538 F.3d 424, 425-426 (6th Cir. 2008); see also Whorton v. Bockting, 549 U.S. 406, 420 (2007) (noting that the Confrontation Clause "has no application to such statements and therefore permits their admission even if they lack indicia of reliability").

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).  With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  Id. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  Id. at 689.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The Supreme Court has confirmed that a federal court's consideration of an ineffective assistance of counsel claim arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Harrington, 562 U.S. at 105.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

In this case, the Michigan Court of Appeals denied relief on the confrontation portion of this claim, finding that any confrontation error under Crawford was harmless given that King's identification relative to the second shooing had no bearing on the first shooting, and that Graham

10

positively identified Petitioner as the perpetrator of the second shooting.   The court also denied relief on the ineffective assistance of counsel portion of this claim, finding that Petitioner could not establish the requisite prejudice.   Dobbs, 2012 WL 4215238, at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Even assuming that the disputed testimony violated Petitioner's confrontation rights, he is not entitled to relief.   For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."   Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Fry v. Pliler, 551 U.S. 112, 117-118 (2007) (confirming that the Brecht standard applies in "virtually all" habeas cases); Ruelas v. Wolfenbarger, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that Brecht is "always the test" in the Sixth Circuit).   Confrontation errors, like other trial errors, are subject to harmless error analysis. Delaware v. VanArsdall, 475 U.S. 673, 684 (1986).

In this case, any error in admitting the police testimony regarding King's pretrial identification of Petitioner as the perpetrator of the second shooting was harmless because it was irrelevant to the first shooting and because Graham identified Petitioner as the perpetrator of both the first and the second shootings.   Additionally, given that any confrontation error was harmless, Petitioner cannot establish that he was prejudiced by counsel's failure to object to the testimony. Therefore, habeas relief is not warranted on this claim.

### C.  Denial of Adjournment Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his request for an adjournment to secure a witness, Juan Muckleroy, who had driven Graham to the hospital after the first shooting, but was (un-relatedly) hospitalized at the time of

11

trial.   According to Petitioner, Muckleroy told the police that he knew Graham from the neighborhood and such testimony would have impeached Graham's testimony that he did not know Muckleroy before the incident.   Petitioner further asserts that, in the absence of an adjournment, the trial court should have given a missing witness instruction.

As discussed, the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.   "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."   Davis, 415 U.S. at 315.   For this reason, the prosecution in a criminal trial must make a good-faith effort to produce relevant witnesses at trial.   Barber v. Page, 390 U.S. 719, 724-725 (1968).   The standard for evaluating whether the prosecution has made a good-faith effort to produce a witness is one of reasonableness.   Ohio v. Roberts, 448 U.S. 56, 74 (1990).   The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial.   See Moreno v. Withrow, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (per curiam) (table) (failure to call res gestae witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

Additionally, while the right of an accused to present a defense has long been recognized as a fundamental element of due process, Washington v. State, 388 U.S. 14, 19 (1967), "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions," United States v. Scheffer, 523 U.S. 303, 308 (1998).   Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." Id.   A trial court has broad discretion in determining whether to grant or deny a motion for a continuance or adjournment in a criminal case.   Ungar v. Sarafite, 376 U.S. 575, 589 (1964); see also Morris v. Slappy, 461 U.S. 1, 11 (1983) (recognizing that trial courts have "broad discretion"

12

in matters related to continuances).   When a habeas petitioner challenges the grant or denial of

such a request, not only must there have been an abuse of discretion, the trial court's decision

"must have been so arbitrary and fundamentally unfair that it violates constitutional principles of

due process."   Bennett v. Scroggy, 793 F.2d 772, 774-775 (6th Cir. 1986).

The Michigan Court of Appeals denied relief on this claim, finding that (i) Muckleroy's

testimony was not sufficiently material because he did not witness the shooting and merely

transported Graham to the hospital, (ii) Petitioner's impeachment argument was weak because it

was possible that Graham did not know Muckleroy and Muckleroy knew Graham from the

neighborhood, and (iii) Petitioner was not prejudiced by the trial court's denial of his adjournment

motion because he was able to impeach Graham's testimony with police testimony that Muckleroy

identified the man whom he drove to the hospital as "Taz," Petitioner's nickname.   The court also

ruled that a missing witness instruction was not required because Muckleroy's failure to appear at

trial was due to his hospitalization and not due to the prosecution's failure to produce him.

Dobbs, 2012 WL 4215238, at *4-*5.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.   The trial court did not violate Petitioner's

constitutional rights nor abuse its discretion by denying Petitioner's adjournment motion.

Muckleroy was unavailable at trial due to his own hospitalization and was not an essential witness

for the defense.   Muckleroy did not witness the shooting and merely drove Graham to the

hospital.   Any prior relationship between Muckleroy and Graham was not relevant to the

shooting.   The impeachment value of Mucklery's testimony was also low given that he could

have been familiar with Graham from the neighborhood without Graham knowing him.

Furthermore, and significantly, Petitioner was able to impeach Graham's testimony that he did not

know Muckleroy with police testimony that Muckleroy identified the man whom he drove to the hospital as "Taz." Dobbs, 2012 WL 4215236, at *5. Given such circumstances, the failure to produce Muckleroy did not render Petitioner's trial fundamentally unfair nor deny him the right to present a defense.

Petitioner is also not entitled to habeas relief on his claim that the trial court erred by not giving a missing witness instruction. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 154 (1977). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Jones v. United States, 527 U.S. 373, 391 (1999); Grant v. Rivers, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief — the failure to instruct must have rendered the trial fundamentally unfair. Cupp v. Naughten, 414 U.S. 141, 147 (1973); Daniels v. Lafler, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. Estelle, 502 U.S. at 71-72.

As an initial matter, the Court notes that there is no clearly-established Supreme Court precedent obligating a trial court to provide a missing witness instruction as a matter of federal due process when a potential witness is unavailable for trial. See Stadler v. Curtin, 682 F. Supp. 2d 807, 821-822 (E.D. Mich. 2010); see also Clark v. Hoffner, No. 2:12-CV-13237, 2014 WL 806393, at *10 (E.D. Mich. Feb. 28, 2014) (citing Stadler and denying habeas relief on similar

claim).   Moreover, the failure to give a missing witness instruction did not render the trial fundamentally unfair given the instructions as a whole, the minimal relevancy of Muckleroy's testimony given that he did not witness the shooting, and the significant evidence of Petitioner's guilt presented at trial.   A missing witness instruction was also not required given that Muckleroy was unavailable due to circumstances beyond the prosecution's control.   Therefore, habeas relief is not warranted on this claim.

### D.  Prosecutorial Misconduct Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by calling a witness, King, who refused to testify in front of the jury.   He asserts that King's refusal to testify left the jury with the impression that Petitioner threatened King in order to discourage his testimony.

The U.S. Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."   Berger v. United States, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly); see also Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (confirming that Donnelly/Darden is the proper standard).

The Michigan Court of Appeals denied relief on this claim finding that, while it is improper for a prosecutor to knowingly call a witness who intends to invoke his or her Fifth Amendment rights, there was nothing in the record to suggest that either the prosecutor or the trial court knew beforehand that King would refuse to testify at trial.   The court also found Petitioner's assertion that the jury was left with the impression that he threatened King to be purely speculative.   Dobbs,

15

2012 WL 4215238, at *5-*6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   There is no evidence in the record that the prosecution had any knowledge that King would refuse to testify fully at trial.   King did not invoke his Fifth Amendment rights and was, in fact, held in contempt of court based upon his refusal to continue to answer the prosecutor's questions.   Petitioner fails to establish that the prosecutor acted improperly or that he was otherwise denied a fundamentally fair trial by King's refusal to testify.   Therefore, habeas relief is not warranted on this claim.

### E.  Sentencing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in scoring Offense Variables 4, 6, and 13 of the Michigan sentencing guidelines.    A sentence imposed within the statutory limits is generally not subject to federal habeas review.   Townsend v. Burke, 334 U.S. 736, 741 (1948); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims that arise out of a trial court's sentencing decision are not cognizable upon habeas review, unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law.   Lucey v. Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).

The Michigan Court of Appeals denied relief on this claim, finding that the offense variables were properly scored and/or that even with a change in scoring one or two of those variables, his minimum sentencing range would not change.   Dobbs, 2012 WL 4215238, at *6-*7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Petitioner's claim that the trial court erred in scoring Offense Variables 4, 6, and 13 of the state sentencing guidelines is not cognizable on habeas review because it is a state-law claim.   See Howard v. White, 76 F. App'x 52, 53 (6th Cir.

16

2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only."); Cheatham v. Hosey, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. 1993) (table) (departure from state-sentencing guidelines is a state-law issue not cognizable on federal habeas review); McPhail v. Renico, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); Robinson v. Stegall, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).   Any alleged error in scoring the offense variables and determining the sentencing guideline range does not justify federal habeas relief.

Moreover, to the extent that Petitioner contests the state court's interpretation of state law regarding the scoring of the offense variables and the application of that law, he is not entitled to relief.   It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." Bradshaw, 546 U.S. at 76; see also Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); Sanford, 288 F.3d at 860.   State courts are the final arbiters of state law and the federal courts will not intervene in such matters.   Lewis, 497 U.S. at 780; Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987).   Habeas relief does not lie for perceived errors of state law.   Estelle, 502 U.S. at 67-68.   Petitioner thus fails to state a claim upon which relief may be granted as to this issue.   Therefore, habeas relief is not warranted on this claim.

### F.  Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of must issue.   See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).   A certificate of may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.   See Slack v.

McDaniel, 529 U.S. 473, 484 (2000).   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to further." Miller-El, 537 U.S. at 327.   In applying that standard, a district court may not full merits review, but must limit its examination to a threshold inquiry into the underlying merit the petitioner's claims.   Id. at 336-337.   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and concludes that reasonable jurists would not debate the Court's conclusion that the petition should be denied.   Accordingly, a certificate of appealability is not warranted in this case.

The Court also denies Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous.   See, e.g., Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002); Fed. R. App. P. 24(a).

## IV.   CONCLUSION

For the reasons stated, the Court concludes that Petitioner's claims lack merit and that he is not entitled to federal habeas relief.   Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated:   August 2, 2016                                   s/Mark A. Goldsmith
        Detroit, Michigan                            MARK A. GOLDSMITH
                                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2016.

s/Karri Sandusky
Case Manager